AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**NORTHERN**     **DISTRICT OF**     **CALIFORNIA**

UNITED STATES OF AMERICA

**V.**

SEMYON NEYS, YEVGENY FRIDMAN
JENA DAVIS, CHRISTOPHER LEE
CALDER, ILYA TUCHINSKY and
NEIL PAUL SANDERS

(Name and Address of Defendant)

**FILED**

JUL 1 3 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**EMC**

**CRIMINAL COMPLAINT**

CASE NUMBER: **3 05 70560**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _7/12/2005_ in _San Francisco_ county, in the _Northern_ District of _California_ defendant(s) did, (Track Statutory Language of Offense)

See Attachment A which is incorporated by reference and attached hereto.

in violation of Title ___21___ United States Code, Section(s) _846, 841(a)(1)_ .

I further state that I am a(n) _Special Agent of the FBI_ and that this complaint is based on the following
                                 *Official Title*

facts:
See attached affidavit of Special Agent Joe Yum incorporated by reference and attached hereto as Attachment B.

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved
As To
Form: _____
    AUSA: E. LEE

                               _____
                                Name/Signature of Complainant:

Sworn to before me and subscribed in my presence,

_7/12/05_             at       _San Francisco, CA_
Date                                      City and State

**EDWARD M. CHEN, U.S. MAGISTRATE JUDGE**
Name & Title of Judicial Officer                              Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

# ATTACHMENT A

COUNT ONE:

Beginning at a time unknown but no later than October of 2004 to approximately July 12, 2005, in the Northern District of California, defendants **SEMYON NEYS, YEVGENY FRIDMAN, JENA DAVIS, CHRISTOPHER LEE CALDER, ILYA TUCHINSKY** and **NEIL PAUL SANDERS** did agree to distribute and possess with intent to distribute approximately 1,456 grams of methamphetamine and approximately 755 grams of ecstasy in violation of Title 21, Section 846.

**Maximum Penalty:** Life imprisonment with a mandatory minimum of 10 years imprisonment; a fine up to $4 million; 5 years of supervised release; and, a $100 special assessment.

COUNT TWO:

On or about January 4, 2005, in the Northern District of California, defendant **SEMYON NEYS** did distribute and possess with intent to distribute approximately 54.4 grams of pure methamphetamine in violation of Title 21, Section 841(a)(1).

**Maximum Penalty:** Life imprisonment with a mandatory minimum of 10 years imprisonment; a fine up to $4 million; 5 years of supervised release; and, a $100 special assessment.

COUNT THREE:

On or about April 15 through April 16, 2005, in the Northern District of California, defendants **SEMYON NEYS** and **JENA DAVIS** did distribute and possess with intent to distribute approximately 207 grams of ecstasy in violation of Title 21, Section 841(a)(1).

**Maximum Penalty**: Twenty years imprisonment; a fine up to $1 million; 3 years of supervised release; and a $100 special assessment.

COUNT FOUR:

On or about April 30, 2005, in the Northern District of California, defendants **SEMYON NEYS** and **JENA DAVIS** did distribute and possess with intent to distribute approximately 440 grams of pure methamphetamine in violation of Title 21, Section 841(a)(1).

**Maximum Penalty:** Life imprisonment with a mandatory minimum of 10 years imprisonment; a fine up to $4 million; 5 years of supervised release; and, a $100 special assessment.

## ATTACHMENT A (page two)

COUNT FIVE:

On or about June 21, 2005, in the Northern District of California, defendants **SEMYON NEYS** and **CHRISTOPHER LEE CALDER** did distribute and possess with intent to distribute approximately 273 grams of ecstasy in violation of Title 21, Section 841(a)(1).

**Maximum Penalty**: Twenty years imprisonment; a fine up to $1 million; 3 years of supervised release; and a $100 special assessment.

COUNT SIX:

On or about July 10, 2005, in the Northern District of California, defendants **SEMYON NEYS, NEIL PAUL SANDERS,** and **YEVGENY FRIDMAN** did distribute and possess with intent to distribute approximately 274 grams of ecstasy in violation of Title 21, Section 841(a)(1).

**Maximum Penalty**: Twenty years imprisonment; a fine up to $1 million; 3 years of supervised release; and a $100 special assessment.

**ATTACHMENT B**

UNITED STATES DISTRICT COURT                )
                                            )
NORTHERN DISTRICT OF CALIFORNIA      )   **AFFIDAVIT IN SUPPORT OF**
                                            )   **COMPLAINT**

I, Joe Yum, being duly sworn, depose and state the following:

1.   I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since September, 2001. I am currently assigned to the Russian/Eurasian Organized Crime Squad at the FBI San Francisco Office.

2.   The statements contained in this affidavit are based on my personal knowledge derived from my participation in this investigation and on information from the following sources which I believe to be reliable:  oral and written reports from federal, state and local law enforcement officials; physical surveillance; information provided by confidential sources; review of consensually monitored recordings; controlled purchases of crystal methamphetamine (hereafter methamphetamine); seizures of methamphetamine and 3,4 methylenedioxymethamphetamine (MDMA, hereafter ecstasy); analysis of telephone toll records and information from pen register/trap and trace; and review of intercepted conversations from a court authorized Title III wire tap.

3.   This affidavit is being submitted in support of a criminal complaint charging Semyon NEYS, aka Sam Neys; Yevgeny FRIDMAN, aka Eugene Fridman; Jena DAVIS; Christopher Lee CALDER, aka Chris L. Calder, aka Christopher Lee (hereafter Christopher CALDER); Ilya TUCHINSKY; and Neil Paul SANDERS (hereafter Neil SANDERS) with conspiracy to distribute and possess with intent to distribute a controlled substance, to wit methamphetamine and ecstasy, in violation of Title 21, United States Code, Section 846; and Semyon NEYS and Christopher CALDER with distribution and possession with the intent to distribute a controlled substance, to wit methamphetamine and ecstasy, in violation of Title 21, United States Code, Section 841(a)(1)

1

## I.   OVERVIEW

4.   This investigation began in October 2004, when information provided by a confidential source who was initially willing to testify (hereafter CS1)[1] indicated that Semyon NEYS sells large volumes of methamphetamine.  Furthermore, information provided by another confidential source who was initially willing to testify (hereafter CS2)[2] indicated that Semyon NEYS has made several attempts to sell various types of firearms.

5.   During the course of this investigation, CS1 made consensually monitored telephone calls to a telephone that was being used by NEYS, bearing the number 415-710-3455 (hereafter Target Telephone 1) to arrange controlled purchases[3] of methamphetamine from NEYS.  CS1 also made consensually monitored telephone calls to Target Telephone 1 to arrange for an FBI undercover agent (hereafter UCA) to meet with NEYS for the purpose of purchasing methamphetamine and firearms from NEYS.  Based on these telephone calls, total of approximately five ounces[4] of methamphetamine were purchased from NEYS.  During a meeting with the UCA and CS1, Semyon NEYS described various firearms that he had access to and told the UCA that he was willing to sell these firearms to the UCA.  To date, the UCA has not been able to purchase firearms from NEYS.  These controlled purchases of methamphetamine lead to the Title III investigation of NEYS and his organization that is detailed herein.

## II.   TITLE III INVESTIGATION

6.   On April 8, 2005, the Honorable Marilyn H. Patel, United States District Judge, Northern District of California, in CR-0590151-MISC-MHP, authorized the interception of wire

---

[1]   CS1 is no longer cooperating with the FBI.

[2]   CS2 is no longer cooperating with the FBI.

[3]   For the purposes of this affidavit, the term "controlled purchase" refers to a purchase of contraband (drugs and/or firearms) at the direction of law enforcement.

[4]   Approximately one ounce of methamphetamine was purchased by the UCA and approximately four ounces of methamphetamine were purchased by CS1.

communications of Semyon NEYS, aka Sam Neys; Yevgeny FRIDMAN, aka Eugene Fridman; Jena DAVIS; and others then known and unknown, over Target Telephone 1. Interception began on April 8, 2005 and ended on May 7, 2005.

7.   On May 10, 2005, the Honorable Marilyn H. Patel, United States District Judge, Northern District of California, in CR-0590151-MISC-MHP, authorized the interception of wire and electronic communications of Semyon NEYS, aka Sam Neys; Yevgeny FRIDMAN, aka Eugene Fridman; Jena DAVIS; Christopher Lee CALDER; aka Chris L. Calder, aka Christopher Lee (hereafter Christopher CALDER); and others then known and unknown, over Target Telephone 1.  Interception began on May 10, 2005 and ended on June 8, 2005.

8.   On May 31, 2005, the Honorable Marilyn H. Patel, United States District Judge, Northern District of California, in CR-0590151-MISC-MHP, authorized the interception of wire communications of Christopher Lee CALDER,  aka Chris L. Calder, aka Christopher Lee; Semyon NEYS, aka Sam Neys; Jena DAVIS; and others then known and unknown, over the telephone bearing the number 415-726-1696 (hereafter Target Telephone 2). Interception began on June 2, 2005 and ended on June 30, 2005.

9.   On July 1, 2005, the Honorable Marilyn H. Patel, United States District Judge, Northern District of California, in CR-0590151-MISC-MHP, authorized the interception of wire and electronic communications of Semyon NEYS, aka Sam Neys; Yevgeny FRIDMAN, aka Eugene Fridman; Jena DAVIS; Christopher Lee CALDER, aka Chris L. Calder, aka Christopher Lee (hereafter Christopher CALDER); Ilya TUCHINSKY; Neil Paul SANDERS (hereafter Neil SANDERS); and others then known and unknown, over Target Telephone 1.  Interception began on July 5, 2005 and is still ongoing.

III.   **SUBJECTS OF THE INVESTIGATION**

10.   Semyon NEYS is believed to be a middle man in a methamphetamine, ecstasy, cocaine, firearms, and stolen electronic equipment trafficking operation.  NEYS plays a leadership role among various individuals in a loosely organized crime group that consists of ethnic

3

Russian and non-Russian members, who are allegedly involved in drug distribution, identity theft, credit card fraud, automobile theft, electronic equipment theft and crimes of violence. NEYS was initially identified when he was arrested by the South San Francisco Police Department on November 21, 2003 for drug and weapons possession. NEYS was further identified by CS1 during a photo lineup and during numerous subsequent surveillances.

11. Yevgeny FRIDMAN is believed to be NEYS' partner in drug and stolen electronic equipment trafficking. FRIDMAN allegedly assists NEYS' drug trafficking operation by storing and delivering money that NEYS uses to purchase drugs, by directly purchasing drugs from various suppliers on behalf of NEYS, and transporting and distributing drugs at the request of NEYS. FRIDMAN was identified by CS2 from his California Department of Motor Vehicles photograph, numerous surveillances and intercepted conversations on Target Telephone 1.

12. Jena DAVIS is believed to be a girlfriend and an associate of NEYS. DAVIS was with NEYS during a controlled purchase of methamphetamine and was observed during surveillance of several drug transactions. NEYS and FRIDMAN use a vehicle, that was purchased under DAVIS' name, to conduct their drug trafficking activities. DAVIS was identified through California Department of Motor Vehicles information, numerous surveillances and intercepted conversations on Target Telephone 1.

13. Ilya TUCHINSKY is believed to be an associate of NEYS and is also a middle man in a methamphetamine and ecstasy trafficking operation. TUCHINSKY is believed to supply methamphetamine to NEYS and FRIDMAN. TUCHINSKY is also believed to purchase ecstasy from NEYS for resale. TUCHINSKY was initially identified from telephone subscriber information and intercepted conversations over Target Telephone 1. TUCHINSKY was further identified on July 5, 2005, when he was arrested by the San Francisco Police Department (SFPD) for drug possession.

14. Neil SANDERS is believed to be a lower level associate of NEYS. SANDERS is

4

believed to purchase ecstasy and methamphetamine from NEYS for resale and broker

marijuana deals for NEYS.  SANDERS is also believed to provide his residence to NEYS

as a place to conduct drug transactions.  SANDERS is also believed to further facilitate

NEYS' drug trafficking activities by driving NEYS to drug deals and delivering drugs to

NEYS.  SANDERS was identified from telephone subscriber information, and

intercepted conversations on Target Telephone 1.

15.   Christopher CALDER is believed to be NEYS' ecstasy supplier.  CALDER is believed to

purchase methamphetamine from NEYS for resale.  CALDER was identified from

telephone subscriber information, California Department of Motor Vehicles information

and through numerous surveillances.

## IV.   SUBSTANTIVE DRUG TRANSACTIONS

A. Undercover Methamphetamine Purchase

16.   On January 4, 2005 CS1 made several consensually monitored telephone calls to NEYS

in order to arrange a purchase of approximately two ounces of methamphetamine with an

undercover agent (UCA).  After several telephone calls between CS1 and NEYS, NEYS

arrived at a meeting location designated over the telephone.  CS1 was equipped with a

video/audio recording device and the UCA was equipped with an audio recording device.

When NEYS arrived at the meeting location, CS1 and the UCA came out of UCA's

vehicle to greet NEYS.  NEYS, CS1 and the UCA all got into the UCA's vehicle.  NEYS

told the UCA and CS1, here is your "vitamin C."  NEYS indicated  that there is one each

in the bottle and that they are separated.  CS1 and the UCA then each counted out and

paid NEYS $800.

17.   Special Agent William Scanlon and I searched CS1, prior to CS1 meeting with NEYS for

the controlled purchase.  No drugs or other contraband items were found on CS1.  To

ensure that there was no possibility for CS1 to obtain drugs from anyone other than

NEYS, the UCA was with CS1 from the time that CS1 was initially searched, to when

CS1 and the UCA provided the drug evidence to me and Special Agent Scanlon.  CS1

5

1   was not searched upon providing the drug evidence, because CS1 was with the UCA

2   during the entire transaction.  CS1 was provided with $800.00 for the methamphetamine

3   purchase, which CS1 used to pay NEYS to purchase drug evidence.

4 18.  The drug evidence obtained from NEYS was a white crystalline substance that was

5   contained in two separate zip lock bags within a vitamin C bottle.  Test results from the

6   Drug Enforcement Agency (DEA) laboratory revealed that the substance purchased from

7   NEYS consisted of a net weight of 56.1 grams containing d-methamphetamine

8   hyrdrochloride (methamphetamine) with 97% purity.  The net yield of pure d-

9   methamphetamine hyrdrochloride was determined to be 54.4 grams.

10 19.  Based on the consensual recordings that were made by CS1 and the UCA, surveillance of

11   the controlled purchase and methamphetamine that was purchased from NEYS, I have

12   probable cause to believe that NEYS committed the following federal offense:

13   Distribution and possession with the intent to distribute a controlled substance, to wit

14   methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1)

15 B. CALDER/NEYS/DAVIS/MOORE Ecstasy Transaction and Seizure

16 20.  On April 8, 2005, NEYS received an incoming call on Target Telephone 1 from Charles

17   MOORE, at telephone number 702-303-5110.  Following is a summary of the intercepted

18   conversation between MOORE and NEYS:[5]  MOORE asks if NEYS can get down here

19   (to Las Vegas, Nevada).  NEYS cannot get to MOORE right now.  MOORE asks, if it is

20   safe to fly (on an air plane) with them vitamins (ecstasy pills).  MOORE asks what if he

[5] The telephone communications that are described herein are pertinent calls from the interception of wire communications to and from Target Telephone 1 or Target Telephone 2, authorized by Honorable Marilyn H. Patel, United States District Judge, Northern District of California, in CR-05-90151-MISC-MHP. The intercepted telephone conversations were heard both in Russian and English. Therefore, some of the telephone conversations described below are based on telephone call summaries of telephone conversations that were translated from Russian to English. I have included parenthetical comments which are my interpretations of the meaning of certain terms and phrases used by the speaking parties in the context of events which were taking place at the time of the calls. These interpretations are based on my review of the intercepted calls and conversations; my understanding of terms commonly used during these conversations; my discussions of the contents of the intercepted calls and conversations with other law enforcement officers authorized to participate in this investigation; and, physical surveillance conducted by Special Agents of the Federal Bureau of Investigation (FBI) and other law enforcement agencies.

6

1  just puts it in the bottom of the bag and just put the bag on the plane. NEYS says he

2  would not do that himself. MOORE asks if NEYS will leave on Monday. NEYS says he

3  does not know if he will even leave on Monday. NEYS asks if MOORE needs 3 or 2

4  (2,000 or 3,000 ecstasy pills). MOORE says, "Four racks." NEYS asks if MOORE has

5  "Twenty-five grand" (MOORE is asking for $4,000 worth of ecstasy pills and NEYS

6  mistakenly believes that MOORE wants 4,000 ecstasy pills.). MOORE states no, "four

7  Gs" ($4,000 worth of ecstasy pills). NEYS says that it (the trip) is not really worth it for

8  him, for that much and asks MOORE to come to NEYS (to San Francisco, California).

9  NEYS says he will give MOORE a deal. If MOORE comes up here in the next couple of

10 days, NEYS will supply him with 900 of them--pretty much, $4 a piece... (900 ecstasy

11 pills for $4.00 per pill) and that is not the normal price. MOORE may get on the bus and

12 get to NEYS.

13 21.  On April 15, 2005, at approximately 10:59 PM, NEYS made an outgoing call on Target

14 Telephone 1 to MOORE, at telephone number 702-303-5110. Following is a summary of

15 the intercepted conversation between MOORE and NEYS: MOORE tells NEYS that he

16 has been calling NEYS all day. MOORE says that he is on his way to 19th Street in West

17 Oakland (California). MOORE does not have a car. MOORE has 35 ($3,500), but he is

18 going to pick up some more money and it might be the 4,000 (dollars). NEYS says he

19 will call MOORE back within an hour.

20 22.  On April 15, 2005, at approximately 11:17 PM, NEYS made an outgoing call on Target

21 Telephone 1 to Christopher CALDER, at telephone number 415-726-1696 (Target

22 Telephone 2). Following is a summary of the intercepted conversation between

23 CALDER and NEYS: CALDER wants to know where NEYS was. NEYS and CALDER

24 discuss the last time they talked. NEYS says he wanted three (3,000 ecstasy pills).

25 NEYS will pick up three right now because he has the money ready. NEYS just woke up

26 a few hours a go. NEYS has the money. NEYS has 10,000 (dollars) ready. NEYS asks

27 if CALDER can do it right now. There's a guy from Vegas (MOORE) who wants one

28

7

(1,000 pills).  NEYS says he needs one by today.  CALDER agrees to give NEYS one today.  NEYS asks if CALDER has one with him.  NEYS will take it and call him right back.  NEYS asks CALDER to come to NEYS' location and that NEYS will take that one off of him.

23.  On April 15, 2005, at approximately 11:22 PM, NEYS made an outgoing call on Target Telephone 1 to CALDER, at telephone number 415-726-1696 (Target Telephone 2).  Following is a summary of the conversation between CALDER and NEYS:  NEYS says he needs that one (1,000 ecstasy pills) for sure.  NEYS asks CALDER to give him one and a half (1,500 ecstasy pills) if he has it.  NEYS asks CALDER to come here (714 28th Avenue, San Francisco, California) within an hour.  CALDER says he is coming ASAP (as soon as possible).

24.  On April 16, 2005, at approximately 12:36 AM, NEYS received an incoming call on Target Telephone 1 from CALDER, at telephone number 415-726-1696 (Target Telephone 2).  Following is a summary of the conversation between CALDER and NEYS:  CALDER says that he is coming down Fulton.  CALDER is on Fulton and 22nd (Avenue) (This is an intersection near NEYS' residence on 28th avenue).  NEYS replies he will wait.

25.  On April 16, 2005, at approximately 12:30 AM, Special Agent William Scanlon saw a dark colored GMC Yukon sport utility vehicle bearing a dealer plate with the name "Colma," parked in the driveway of 714 28th Avenue, San Francisco, California (address of NEYS' residence in San Francisco, California).  At approximately 12:45 AM, I saw the dark colored GMC Yukon departing the driveway at 714 28th Avenue and heading East on Fulton Street.

26.  During several subsequent intercepted telephone calls on Target Telephone 1 between MOORE and NEYS, on April 16, 2005, NEYS and MOORE arrange for MOORE to take the Bay Area Rapid Transit (BART) train from Oakland, in order to meet with NEYS in San Francisco, California.  On April 16, 2005, at approximately 3:33 PM, NEYS and

8

1    MOORE agree to meet at Blondies Pizza on Powell Street, San Francisco, California.

2  27.  During a surveillance of this meeting, at approximately 3:51 PM, FBI Agents saw NEYS,

3    MOORE, and DAVIS meet in front of Blondies Pizza, located at 63 Powell Street, San

4    Francisco, California. NEYS, MOORE and DAVIS were then seen entering a nearby

5    parking garage on foot and subsequently leaving the parking garage in a green Ford

6    Explorer, bearing California License Plate Number 4UAN857, a vehicle that is registered

7    to DAVIS. DAVIS was seen driving the Ford Explorer, NEYS was sitting in the front

8    passenger seat, and MOORE was sitting in the back seat. NEYS, MOORE and DAVIS

9    then drive to a Safeway Supermarket and subsequently to NEYS' residence at 714 28th

10    Avenue, San Francisco, California. At approximately 6:30 PM, NEYS and MOORE

11    leave 714 28th Avenue in NEYS' red Nissan 300ZX, bearing California License Plate

12    Number 5KES742. At approximately 6:50 PM, NEYS drops MOORE off at the corner

13    of Powell and Ellis Streets. MOORE was seen walking away from NEYS' vehicle, into

14    the Blondie's Pizza where MOORE, NEYS and DAVIS initially met, then into a near by

15    Bay Area Rapid Transit (BART) train station.

16  28.  Based on information from intercepted conversations mentioned above, I told San

17    Francisco Police Department (SFPD) Lieutenant Rick Perry regarding the meeting

18    between NEYS and MOORE. I also told Lieutenant Perry that there is probable cause to

19    believed that MOORE will be in possession of a large amount of ecstasy pills after this

20    meeting. MOORE was subsequently arrested at the BART station by SFPD with

21    assistance from the BART Police. According to an SFPD arrest report, MOORE was in

22    possession of 790 suspected ecstasy tablets. MOORE was subsequently charged with

23    possession of controlled substance for sale. The charge against MOORE was later

24    dismissed, pending further investigation. Information obtained from the SFPD Crime

25    Laboratory indicates that the pills that were obtained from MOORE tested positive for

26    MDMA (ecstasy). The total net weight of the ecstasy pills was 207.24 grams.

27  29.  On April 16, 2005, at approximately 9:52 PM, NEYS received an incoming call on Target

28

1    Telephone 1 from MOORE, at telephone number 702-4136587.  Following is a summary

2    of the intercepted conversation between MOORE and NEYS:  MOORE tells NEYS that

3    he is on a three way call right now.  MOORE is at 850 Bryant (location of the jail).

4    MOORE tells NEYS that he got arrested three minutes after MOORE got out of NEYS'

5    car and the bail is a g ($1,000).  MOORE tells NEYS that his girlfriend is also on the line.

6    NEYS asks MOORE if he has someone here (in the San Francisco Bay Area) that NEYS

7    can give the bail money to.  NEYS says that the bail money is here (NEYS will provide

8    the bail money) and to have someone come and get the money from him.  NEYS offers to

9    pay for the cab for them (someone who will pick up the bail money for MOORE) to get

10   here.  MOORE tells NEYS that the cops were not supposed to snatch him up (arrest him)

11   and that it was a case of mistaken identity.  MOORE says that he was charged with

12   possession of a controlled substance for sale.  NEYS tells MOORE, that is not too bad.

13   30.  After receiving several calls from MOORE's associates on Target Telephone 1, on April

14        17, 2005, at approximately 7:36 PM, NEYS received an incoming call on Target

15        Telephone 1 from MOORE, at telephone number 510-444-1775.  Following is a summary

16        of the intercepted conversation between MOORE and NEYS:  MOORE tells NEYS that

17        he is out (of jail).  MOORE says that he appreciates the ride (bail money).  NEYS says he

18        will call MOORE back from a different number (NEYS obtained a second telephone

19        subsequent to MOORE's arrest).  NEYS asks for MOORE's call back number and

20        MOORE provides telephone number 510-444-1775 to NEYS.

21   31.  On April 25, 2005, at approximately 12:10 PM, DAVIS made an outgoing call on Target

22        Telephone 1 to her mother (first and last name unknown), at telephone number 303-477-

23        7778.  Following is a summary of a part of the intercepted conversation between DAVIS

24        and her mother:  DAVIS tells her mother about the arrest of MOORE (Portion of this

25        conversation was minimized and the conversation described herein was intercepted

26        during spot monitoring.).  DAVIS says that NEYS was afraid that MOORE was going to

27        snitch (report NEYS to the police).  NEYS paid for MOORE's bail, gave MOORE $500

28

10

1    and rented a car for MOORE.

2    32.    Based on the information obtained from the above described intercepted conversations,

3    surveillances and seizure of ecstasy, I have probable cause to believe that NEYS, DAVIS

4    and CALDER committed the following federal offenses:  Distribution and possession

5    with the intent to distribute a controlled substance, to wit ecstasy, in violation of Title 21,

6    United States Code, Section 841(a)(1); and conspiracy to distribute and possess with

7    intent to distribute a controlled substance to wit ecstasy, in violation of Title 21, United

8    States Code, Section 846.

9    C. SOTOMAYOR/NEYS/DAVIS Methamphetamine Transaction and Seizure

10   33.    On April 30, 2005, at approximately 5:47 PM, NEYS received an incoming call on Target

11   Telephone 1 from URIEL SOTOMAYOR, at telephone number 650-222-7141.

12   Following is a summary of the intercepted conversation between SOTOMAYOR and

13   NEYS:  NEYS asks SOTOMAYOR to come to him.  NEYS has to go to the city (San

14   Francisco) to pick up the money.  SOTOMAYOR says that he will wait for NEYS.

15   SOTOMAYOR asks if NEYS wanted two of them (2 pounds of methamphetamine).

16   NEYS says, let's do one (one pound of methamphetamine) because he knows for sure

17   that he will have cash for one, but he does not know if he will have cash for two.  NEYS

18   says, one for sure.  SOTOMAYOR says, alright.

19   34.    Following the above described telephone conversation, SOTOMAYOR and NEYS

20   exchanged several intercepted telephone calls on Target Telephone 1, where they finally

21   arranged to meet at the Westlake Shopping Center, located at 375 Westlake Mall, Daly

22   City, California.  Based on intercepted telephone conversations and previous

23   surveillances of SOTOMAYOR, I provided Daly City Police Department (DCPD)

24   Sergeant Patrick Hensley with a description and possible location of SOTOMAYOR's

25   vehicle.  SOTOMAYOR's vehicle was then believed to be a Silver Lexus 300 with paper

26   dealer plates with the words "Putnam Lexus."  I also told Sergeant Hensley that there is

27   probable cause to believe that SOTOMAYOR will be in possession of a large amount of

28

11

methamphetamine.  It was later discovered that SOTOMAYOR drove to the Westlake

Shopping Center in a vehicle that he was not previously seen driving.  This vehicle was a

gold Honda Accord bearing California License Plate Number 3USX428, registered to

Andre K. Boyd, P.O. Box 60564, Palo Alto, California 94306.  FBI agents who were

conducting surveillance in the area and DCPD officers who responded to the scene

initially could not locate SOTOMAYOR.  FBI agents and DCPD officers then proceeded

to search the Westlake Shopping Center for SOTOMAYOR.

35.    During this period, several intercepted telephone calls were exchanged between NEYS

and SOTOMAYOR on Target Telephone 1, where they discussed the police presence in

the area and their plans to meet (to conduct the drug transaction).  One of these calls is

described below.

36.    On April 30, 2005, at approximately 7:05 PM, NEYS received on incoming call on

Target Telephone 1 from SOTOMAYOR, at telephone number 650-222-7141.  Following

is a summary of the intercepted conversation between SOTOMAYOR and NEYS:  NEYS

says he is driving around.  SOTOMAYOR says that there is hella fucking cops around

here.  SOTOMAYOR asks NEYS where he is.  SOTOMAYOR says he will be on the

side of the Burlington Coat Factory (a store in the Westlake Shopping Center).  NEYS

says okay, he knows where that is.

37.    Following this call, FBI agents located SOTOMAYOR standing next to a gold Honda

Accord bearing California License Plate Number 3USX428, near an Arco gas station at

151 Southgate Avenue, Daly City, California.  SOTOMAYOR and NEYS were then seen

meeting in front of Westlake Laundry, at 169 Southgate Avenue, Daly City, California.

NEYS and SOTOMAYOR were subsequently seen walking out of Westlake Laundry and

into a back alley behind Westlake Laundry.  FBI agents observed SOTOMAYOR and

NEYS meeting near a gold Honda Accord.  The gold Honda Accord was later seen

driving away from the Westlake Shopping Center.  Surveillance agents also observed

DAVIS in the area with NEYS.  NEYS and DAVIS had the following telephone

12

1   conversation after SOTOMAYOR left the area.

2   38.   On April 30, 2005, at approximately 7:57 PM, NEYS made an outgoing call on Target

3         Telephone 1 to DAVIS, at telephone number 707-478-8564.  Following is a summary of

4         the intercepted conversation between DAVIS and NEYS:  DAVIS says she is in the back

5         (near where NEYS and SOTOMAYOR met).  NEYS asks DAVIS what car she sees.

6         DAVIS says she sees no cars that are moving.  DAVIS is parked in the back of the wash

7         and dry (Westlake Laundry).  NEYS asks DAVIS to look for the nail shop to the left of

8         the wash and fold.  NEYS asks DAVIS the color the garbage can in front of it.  DAVIS

9         says it is green.  NEYS tells DAVIS to look to the right and asks if she sees a black

10        garbage can and a white bag on top of a cardboard box.  NEYS asks DAVIS what she

11        thinks is in the bag.  DAVIS says that she knows.  NEYS tells DAVIS to watch that bag

12        right now.  NEYS will bring DAVIS a pack of cigarettes.

13  39.   During the above described intercepted conversation, I believe that NEYS is instructing

14        DAVIS to keep her eye on the bag containing methamphetamine.  I also believe that

15        DAVIS acknowledges that she knows what is in the bag and complies with NEYS'

16        request.

17  40.   Following the intercepted telephone conversation described above, I advised the

18        surveillance agents and DCPD of the location of the suspected methamphetamine.  At

19        approximately 8:10 PM, DCPD Officer Mike Brennan seized a white and red Target

20        Store plastic shopping bag that was located near plastic garbage bins in the back alley

21        behind KY Nails.  The Target shopping bag contained a white tee-shirt and approximately

22        one pound of white crystalline substance that is suspected to be crystal

23        methamphetamine, contained in a zip lock bag.  The suspected methamphetamine was

24        subsequently sent to the DEA laboratory for testing.  Test results from the DEA

25        laboratory revealed that the substance seized from NEYS consisted of a net weight of

26        444.7 grams containing d-methamphetamine hyrdrochloride with 99% purity.  The net

27        yield of pure  d-methamphetamine hyrdrochloride was determined to be 440.2 grams.

28

13

1     SOTOMAYOR's fingerprints were found on the plastic bag that the methamphetamine

2     was contained in.

3   41.   At the time of the seizure, a green Ford Explorer was parked in the back alley behind KY

4     Nails. DAVIS was sitting in the driver's seat of the explorer. Officer Brennan

5     approached DAVIS and obtained information regarding her identity and telephone

6     number. DAVIS was identified as Jena DAVIS, telephone number 707-478-7564.

7   42.   On April 30, 2005, at approximately 8:59 PM, NEYS made an outgoing call on Target

8     Telephone 1 to SOTOMAYOR, at telephone number 650-222-7141. Following is a

9     summary of the intercepted conversation between SOTOMAYOR and NEYS: NEYS

10     tells SOTOMAYOR it is all bad. NEYS says he walked away for a minute to his laundry

11     and it (methamphetamine) is all gone. NEYS tells SOTOMAYOR that his girl (DAVIS)

12     saw it all go down. SOTOMAYOR asks, who got it, the cops? NEYS replies, yeah.

13     SOTOMAYOR says that he told (warned) NEYS. NEYS tells SOTOMAYOR, that he

14     told SOTOMAYOR that he did not want it. SOTOMAYOR says that his fingerprints are

15     on that shit (methamphetamine). NEYS says, yeah, mine too. SOTOMAYOR says that

16     he will call NEYS back.

17   43.   Based on information obtained from the above described intercepted conversations,

18     surveillances and seizure of methamphetamine, I have probable cause to believe that

19     NEYS and DAVIS committed the following federal offenses: Distribution and possession

20     with the intent to distribute a controlled substance, to wit methamphetamine, in violation

21     of Title 21, United States Code, Section 841(a)(1); and conspiracy to distribute and

22     possess with intent to distribute a controlled substance to wit methamphetamine, in

23     violation of Title 21, United States Code, Section 846.

24   D. CALDER/ANCAJIMA Ecstasy Transaction and Seizure

25   44.   On June 21, 2005 at approximately 6:22 PM, CALDER received on incoming call on

26     Target Telephone 2 from NEYS, at telephone number 415-710-3455 (Target Telephone

27     1). Following is a summary of the conversation between CALDER and NEYS: NEYS

28

1   says let's meet up.  NEYS is at the Hotel, the same one on Pine and Mason (Streets in

2   San Francisco).  NEYS wants the same ones, the Elephants (type of ecstasy pill).

3   CALDER does not have them anymore.  CALDER offers Seahorse (type of ecstasy pill).

4   NEYS says yeah.

5   45.   On June 21, 2005 at approximately 6:24 PM, CALDER made an outgoing call on Target

6         Telephone 2 to Paul ANCAJIMA, at telephone number 415-283-5994.  Following is a

7         summary of the conversation between CALDER and ANCAJIMA:  CALDER asks for

8         one more (1,000 more ecstasy pills) from ANCAJIMA.  ANCAJIMA says okay.

9         CALDER asks for the thick ones (thick ecstasy pills).  ANCAJIMA says that he has to get

10        rid of these (ecstasy pills that he currently has) first.  CALDER asks if ANCAJIMA stills

11        has four left (4,000 ecstasy pills left).  ANCAJIMA says a-ha (yes).  ANCAJIMA will be

12        there soon.

13  46.   On June 21, 2005 at approximately 7:40 PM, CALDER received an incoming call on

14        Target Telephone 2 from ANCAJIMA, at telephone number 415-283-5994.  Following is

15        a summary of the conversation between CALDER and ANCAJIMA:  ANCAJIMA says

16        that he is outside.

17  47.   I provided information from the above described intercepted conversations and

18        information from a previous surveillance of ANCAJIMA to the San Francisco Police

19        Department.  Based on this information, Paul ANCAJIMA was arrested near 56 John

20        Street, San Francisco, California.  During the arrest, a bag of pills, that were suspected to

21        be ecstasy were found on ANCAJIMA's person.  Test results from the San Francisco

22        Police Department Crime Laboratory shows that the pills seized from ANCAJIMA tested

23        positive for 3,4-MDMA (ecstasy).  According to the laboratory report, the  gross weight

24        of the pills is 273.8 grams.

25  48.   Based on the information obtained from the above described intercepted conversations,

26        surveillances and seizure of ecstasy, I have probable cause to believe that CALDER and

27        NEYS committed the following federal offenses:  Distribution and possession with the

28

15

1    intent to distribute a controlled substance, to wit ecstasy, in violation of Title 21, United

2    States Code, Section 841(a)(1); and conspiracy to distribute and possess with intent to

3    distribute a controlled substance to wit methamphetamine, in violation of Title 21, United

4    States Code, Section 846.

5  E. NEYS/FRIDMAN/TANG/SANDERS Drug transaction

6  49.   On July 10, 2005, at approximately 1:06 pm NEYS received an incoming call on Target

7        Telephone 1 from Jason TANG at telephone 415-261-3817. Following is a partial

8        summary of the conversation between NEYS and TANG: NEYS says I'm in Richmond

9        ... at Eugene's house (FRIDMAN's house) ... La Playa .. La Playa. Is it ok if you meet

10       Eugene (FRIDMAN)? He has all the money. TANG asks, should I bring the ... NEYS

11       says the vitamins (ecstasy) and the thing (narcotics). TANG says ok. NEYS asks the total

12       is going to be fifty-five, fifty-six ($5,500 to $5,600). TANG says I didn't do the math yet.

13       NEYS says for one hundred ten ... you can't do nine because I can get it for eight-fifty if I

14       wait an extra day. TANG says nah ... that's like a hundred bucks out of my pocket ... I'm

15       not really making that much on it. NEYS says ok, it will be fifty-five, fifty-six. It was

16       different last time .. the white girl (cocaine). TANG says I didn't get a chance to check it

17       ... I just grabbed it and took off. NEYS says it is not the shiny stuff that people want so

18       much now ... it breaks down into a fine powder right away ... I like the stuff that breaks

19       down into chunks. NEYS says can you make it forty-five instead of forty-six? I can't

20       make as much off of it as I can with the other stuff. TANG says if I take off one hundred

21       bucks, I'll be making like one hundred seventy bucks or some stupid shit like that. NEYS

22       says whatever you need to do .... I'll still grab it. NEYS says in background Zhenya

23       (FRIDMAN) can you meet him on LaPlaya? FRIDMAN says in background Lombard

24       (Lombard Street, San Francisco, California). NEYS says Pierce, off Pierce (SANDER's

25       residence). Where we usually meet, recently. TANGS says yeah yeah yeah I remember ...

26       give me thirty - forty minutes.

27  50.   During the above described intercepted conversation, I believe that NEYS is arranging to

28

16

purchase 1,000 ecstasy pills and an unknown quantity of methamphetamine or cocaine from Tang. I also believe that NEYS is arranging to have FRIDMAN conduct the transaction with TANG at or near SANDERS' residence.

51.   On July 10, 2005, at approximately 1:12 pm, NEYS made an outgoing call on Target Telephone 1 to SANDERS, at telephone number 415-637-8757. Following is a summary of the conversation between NEYS and SANDERS: SANDERS says I'm on Jackson and Van Ness. NEYS says in about thirty minutes can we stop by and leave something (drugs) there (in SANDERS' residence) for a few minutes? Eugene (FRIDMAN) will call you and you guys can meet up and figure it out. SANDERS says you can always leave it in my (unintelligible word). NEYS says I am going to leave it with you and pick it up off you later.

52.   During the above intercepted conversation, I believe that NEYS is asking SANDERS to hold the drugs that FRIDMAN will purchase from TANG. I believe that SANDERS agrees to hold the drugs.

53.   On July 10, 2005, at approximately 2:05 pm, FBI agents observed FRIDMAN exit a dark purple Jeep Grand Cherokee bearing California License Plate Number 4ZHE486 which was parked on Alhambra Street, San Francisco, California in front of SANDERS's residence at 179 Alhambra Street, Apartment 201. FRIDMAN walked to the entranceway of 179 Alhambra Street.

54.   At approximately 2:14 pm, FRIDMAN was observed entering the passenger side of a white BMW 3-series vehicle near the intersection of Alhambra Street and Pierce Street, San Francisco, California.

55.   At approximately 2:15 pm, FBI Agents observed the white BMW that was driven by TANG and bearing California license plate 3VEX717, traveling east on Alhambra Street.

56.   On July 10, 2005, at approximately 3:04 pm NEYS made an outgoing call on Target Telephone 1 to SANDERS at telephone number 415-637-8757. Following is a partial summary of the conversation between NEYS and SANDERS: NEYS asks did you get it?

1    SANDERS says yup.  NEYS says if you can come to Novato, I'll give you a special price.

2    SANDERS asks what special price?  NEYS says it's a surprise.  NEYS says that he had

3    to stab two people last night.

4    57.    On July 10, 2005, at approximately 3:42 PM, NEYS made an outgoing call on Target

5    Telephone 1 to SANDERS, at telephone number 415-637-8757.  Following is a partial

6    summary of the conversation between NEYS and SANDERS:  SANDERS says I'm in

7    Novato.  NEYS says I'm at South Novato Boulevard and Delong (phonetic).

8    58.    On July 10, 2005, at approximately 3:51 PM, NEYS made an outgoing call on Target

9    Telephone 1 to SANDERS, at telephone number 415-637-8757.  Following is a partial

10   summary of the conversation between NEYS and SANDERS:  NEYS provide directions

11   to SANDERS.  NEYS asks, do you see me?  SANDERS says yes, I see you.  NEYS says

12   park ... I'll come downstairs.

13   59.    On July 10, 2005, at approximately 7:28 PM, NEYS made an outgoing call on Target

14   Telephone 1 to Michael RADER, at telephone number 415-368-3278.  Following is a

15   partial summary of the conversation between NEYS and RADER.  NEYS asks RADER if

16   he heard what happened.  Four guys jumped (attacked) NEYS at a house where NEYS

17   had gone to pick up DAVIS.  NEYS stabbed someone in the leg and the other one in

18   back.  NEYS was hit with a chair in the back, he fell and dropped his bag.  Someone took

19   the bag which had a half a pound (of methamphetamine) in it.  Misha tells NEYS to grab

20   Jesse and Mike.  Neys says he knows where they are (the unidentified males who took the

21   methamphetamine from NEYS), and NEYS can point to which house they are going to be

22   at.  NEYS wants to fuck them all over and will give $1,000 to each person (who helps

23   him)

24   60.    July 10, 2005, at approximately 7:32 PM, NEYS received an incoming call on Target

25   Telephone 1 from Mike (phonetic) LNU at 415-756-6632.  Following is a partial

26   conversation between NEYS and Mike.  NEYS asks Mike to get down to Santa Rosa

27   tonight.  Mike says yeah.  NEYS said he had four heads jump (attack) him, he took a

28

knife to one guy's leg and put one (a knife) in the back of some other dude. NEYS said,

I took a chair to the back, and they (the unidentified males) took off with my laptop bag.

NEYS said there were too many of them. NEYS said he talked to Boo from Ellis and he

might be down there. NEYS says he wants to make sure he can find them right now, and

we want to bring some people because they had like four or five people. Mike says, I just

need to bring two. NEYS says they (the unidentified males) are not small, they are a little

bigger than me, so get your people together and I'll make sure FRIDMAN finds you.

Mike says they are always together, he does not need any time, whenever. NEYS says

done, I'll give you a call. NEYS answers another call from an unidentified male (UM)

explaining that he just talked to Mike, who is going to get his crew together and meet

NEYS down there tonight. NEYS says he wants to cut everyone, he had fun, this was the

first time he has cut someone. UM tells NEYS no, Gabe was the first one. NEYS says he

was punching him, not realizing he was punching him with a knife.

61.    On July 10, 2005, at approximately 7:42 PM, NEYS made an outgoing call on Target

Telephone 1 to ZAYCHENKO, at telephone number 415-265-4516. Following is a

partial summary of the conversation between NEYS and ZAYCHENKO: NEYS tells

ZAYCHENKO that four guys jumped him at a girl's house. NEYS got hit with a chair in

the back and fell down, the bag flew out of his hand and he stuck the knife in one guy's

leg and another in the back. NEYS said they took the bag and ran away as NEYS was

stabbing a guy in the leg. NEYS says the knife he used was a new one that has a hole in

the grip, and he didn't realize that while he was punching with it (the knife) in his hand,

he was actually stabbing him in the leg. NEYS tells ZAYCHENKO, they got like a half a

pound (of methamphetamine). NEYS said he showed some shit (methamphetamine) to

someone and then tried to leave, and they told him he wasn't going anywhere and it all

(the fight) started. NEYS says his little friend is in Santa Rosa is looking for them, and

NEYS has Mike and his boys ready to go. ZAYCHENKO tells NEYS to get the full

names and addresses (of the unidentified males). NEYS says the guys are in and out of

19

1     houses, in and out of jail, they are tattooed, skin head looking. NEYS says he is sure he

2     will find them tonight.

3   62.   On July 10, 2005, at 8:45 PM, NEYS made an outgoing call on Target Telephone 1 to

4     Beth (phonetic) LNU at telephone number 707-360-5684. The following is a partial

5     summary of the conversation between NEYS and Beth: NEYS tells Beth that he wants to

6     blow up her house after what happened yesterday, kidnap her sister, and hold her for

7     ransom until he finds the people he is looking for. NEYS then says he is joking. Beth

8     says she is scared about NEYS' threats, because it's her mom's house and she loves her

9     sister. NEYS tells Beth that she knows he can blow it (her mom's house) up, but he is

10     joking and Beth has nothing to be scared of, just help him find these people.

11   63.   On July 10, 2005, at approximately 9:48 PM, NEYS received an incoming call on Target

12     Telephone 1 from Mike, at telephone number 415-756-6632. The following is a partial

13     summary of the conversation between NEYS and Mike. NEYS says he has six people in

14     his room trying to find them. Mike is going to stop by the Mission to pick up a piece

15     (gun) real quick. NEYS said that Gene (ZAYCHENKO) and RADER are coming down

16     and will bring his (NEYS') piece (gun). NEYS doesn't have any rounds (for his gun).

17     Mike asks what he needs. NEYS says nine (9mm rounds). Mike has them. Mike is in a

18     hot 300 ZX and is with his boy (associate). NEYS tells Mike to drive slow and watch the

19     55 speed limit.

20   64.   Based on the above described intercepted conversations, Santa Rosa Police Department

21     was contacted and informed of the planned acts of violence by NEYS and his co-

22     conspirators against the four unidentified males. According to a Santa Rosa Police

23     Department incident report 05-12545, on July 10, 2005, at approximately 10:25 PM,

24     Santa Rosa Police conducted a traffic stop of NEYS. NEYS was driving a gray, 1990

25     Nissan 300ZX with Benjamin BRODIE as the passenger. NEYS was driving with a

26     suspended license. A consent search of the vehicle resulted in the discovery of 274.4

27     grams of ecstasy (approximately 1,000 ecstasy pills), 49.5 grams of crystal

28

1    methamphetamine, 87.9 grams of cocaine, various drug paraphernalia, a California

2    Driver's license number B9874586 in the name of Andrei Sergeievich Lutsenko, and

3    $1,420 in cash located on NEYS' person.

4    65.   Based on above described intercepted conversations, surveillance and seizure of the

5    ecstasy pills by the Santa Rosa Police Department, I believe that NEYS arranged to

6    purchase 1,000 ecstasy pills from Tang.  This purchase with Tang was carried out by

7    FRIDMAN who provided the ecstasy pills to SANDERS to hold for NEYS.  SANDERS

8    then delivered the ecstasy pills to NEYS in Novato.  These pills were later seized from

9    NEYS by the Santa Rosa Police Department.

10   66.   Based on information obtained from the above described intercepted conversations,

11   surveillance and seizure of ecstasy, I have probable cause to believe that NEYS,

12   FRIDMAN and SANDERS committed the following federal offenses:  Distribution and

13   possession with the intent to distribute a controlled substance, to wit ecstasy, in violation

14   of Title 21, United States Code, Section 841(a)(1); and conspiracy to distribute and

15   possess with intent to distribute a controlled substance, to wit ecstasy, in violation of Title

16   21, United States Code, Section 846.

17   **V.     DRUG CONSPIRACY**

18   A. NGUYEN/NEYS/FRIDMAN Ecstasy and Methamphetamine Deal

19   67.   On June 2, 2005, at approximately 10:45 AM, NEYS made an outgoing call on Target

20   Telephone 1 to Anthony NGUYEN, at telephone number 408-603-7030.  Following is a

21   partial summary of the conversation between NEYS and NGUYEN:  NEYS tells

22   NGYUEN that he needs both things today, the vitamins (ecstasy) and the shit

23   (methamphetamine). NGUYEN says ok, and asks NEYS one of each (1,000 ecstasy pills

24   and one pound of methamphetamine) or two of the vitamins (2,000 ecstasy pills) and one

25   (pound) of the shit (methamphetamine).  NEYS asks what kind of vitamins (ecstasy)

26   NGUYEN has.  NGUYEN says Pink Eyes, Red Face (types of ecstasy) and later tells

27   NEYS he also has Monkeys (type of ecstasy). NEYS asks NGUYEN to get some more

28

21

Blue Monkeys (type of ecstasy) because they were good.  NGUYEN says he will call him up and see if he can get those (Blue Monkey ecstasy pills).  NEYS says he will come to see NGUYEN for sure because he doesn't have any shit (methamphetamine), nobody's got any shit (methamphetamine).  NGUYEN asks when NEYS is going to come.  NEYS tells NGUYEN as soon as you call me and let me know what you have and that you have it, I will come.  NEYS says if anything NEYS might send his partner, Eugene (FRIDMAN), because he's (FRIDMAN) in the city and has the money.  NEYS will probably come with him (FRIDMAN) the first time so NGUYEN can meet him (FRIDMAN) in a deal.

68.  On June 2, 2005, at approximately 12:51 PM, NEYS received an incoming call on Target Telephone 1 from NGUYEN, at telephone number 408-603-7030.  Following is a partial summary of the conversation between NEYS and NGUYEN:  NGUYEN tells NEYS that he has four or five different kinds, Red Face, Woman Head, or Woman Face (types of ecstasy).  NEYS asks what's the price-- can you do (sell the ecstasy for) three four ($3,400). They will talk when they meet.  NEYS is waiting for Eugene (FRIDMAN) to pick him up.

69.  On June 2, 2005, at approximately 6:08 PM, NEYS made an outgoing call from Target Telephone 1 to NGUYEN, at telephone number 408-603-7030.  Following is a partial summary of the conversation between NEYS and NGUYEN:  NEYS tells NGUYEN he wants the Blue Monkeys (type of ecstasy).  NGUYEN offers Blue Lady Face (type of ecstasy).  NEYS asks NGUYEN how's the stuff (methamphetamine), is it big. NEYS says he doesn't want any shake (filler material).  NEYS asks if the pieces (of methamphetamine) are big.  NGUYEN tells NEYS it's (the methamphetamine) like finger sizes.

70.  On June 2, 2005, at approximately 7:50 PM, NEYS received an incoming call on Target Telephone 1 from NGUYEN, at telephone number 408-603-7030.  Following is a partial summary of the conversation between NEYS and NGUYEN:  NEYS says that Eugene (FRIDMAN) is coming by himself and has 14,000 ($14,000) on him.  NEYS might make

1    a late appearance. He (FRIDMAN) will be there around 9:00 or 9:30 (PM).

2    71.    On June 2, 2005, at approximately 9:18 PM, NEYS made an outgoing call on Target

3            Telephone 1 to FRIDMAN, at telephone number 415-710-3564. The following is a

4            partial summary of the conversation between NEYS and FRIDMAN: NEYS says that he

5            needs to go right now. NEYS says, we got to go 280 (NEYS and FRIDMAN has to go

6            South on Highway 280). NEYS says that he does not have the money. FRIDMAN asks,

7            where do you want to meet me.

8    72.    On June 2, 2005, at approximately 9:20 PM, NEYS made an outgoing call from Target

9            Telephone 1 to NGUYEN, at telephone number 408-603-7030. Following is a partial

10           summary of the conversation between NEYS and NGUYEN: NEYS says he is on his

11           way (to meet NGUYEN) too (in addition to FRIDMAN). NEYS asks NGUYEN, two

12           boats or one boat (2,000 or 1,000 ecstasy pills)? NGUYEN says two right? NEYS says

13           yeah. NGUYEN tells NEYS they (the ecstasy pills) are pretty good because they just got

14           them from someone. NEYS says he wants the other one (methamphetamine) too, but

15           (with) no shake (filler material). NGUYEN says its (the methamphetamine) big chunks

16           with no shake (filler material). NEYS says lets go to Santana Row (a shopping center in

17           San Jose, California). NGUYEN says yeah.

18   73.    On June 2, 2005, at approximately 11:05 PM, NEYS made an outgoing call from Target

19           Telephone 1 to NGUYEN, at telephone number 408-603-7030. Following is a partial

20           summary of the conversation between NEYS and NGUYEN: NEYS says they just

21           passed a red Ferrari (car parked in the parking lot). NGUYEN says he is coming down

22           (to meet NEYS and FRIDMAN). NEYS says he will walk to the Ferrari and meet

23           NGUYEN there. NGUYEN says okay.

24   74.    On June 2, 2005, at approximately 11:06 PM, NEYS made an outgoing call from Target

25           Telephone 1 to NGUYEN, at telephone number 408-603-7030. Following is a partial

26           summary of the conversation between NEYS and NGUYEN: NGUYEN tells NEYS he

27           is coming down (to meet him), and he will be out in 30 seconds.

28

75.   On June 2, 2005, at approximately 11:07 PM, FBI agents observed NEYS standing near a Red Ferrari, parked next to the sidewalk outside of Blowfish Sushi, 355 Santana Row, #1010, San Jose, California. NGUYEN was seen walking south from the area near the red Ferrari. At approximately 11:08 PM, a dark colored Jeep Grand Cherokee bearing California License Plate Number 4ZHE486, was parked facing eastbound on the north side of Olin Avenue, just west of Santana Row. NGUYEN and FRIDMAN were seen conversing near the Jeep Grand Cherokee. At approximately 11:10 PM, NEYS, FRIDMAN, and NGUYEN were seen standing and talking directly in front of Hotel Valencia. At 11:13 PM, FRIDMAN was seen in the driver seat of the Jeep Grand Cherokee. NEYS and NGUYEN approached the Jeep Grand Cherokee and entered the Jeep Grand Cherokee through the front and rear passenger side doors. At approximately 11:19 PM, NGUYEN was seen standing outside the open passenger side door of a white Honda California License Plate Number 4SAR977, that was parked facing westbound on the south side of Olin Avenue. An unknown Asian male was sitting in the passenger side of the white Honda. NGUYEN then ran back across Olin Avenue in the direction of the Jeep Grand Cherokee and a dark teal green Volkswagen Golf, California License Plate Number 4DND186, that was parked directly behind the Jeep Grand Cherokee. NGUYEN had a light colored package in his left hand as he left the Honda. At approximately 11:24 PM, the passenger side door of the Volkswagen Golf was open, and NGUYEN was seen reaching inside the Volkswagen Golf. NGUYEN approached the passenger side of the Jeep Grand Cherokee carrying a package. NEYS was standing outside the passenger side of the Jeep Grand Cherokee. NGUYEN gave the package to NEYS who then placed the package inside the Jeep Grand Cherokee. NEYS and NGUYEN then shook hands.

76.   On June 3, 2005, at approximately 1:53 AM, NEYS made an outgoing call from Target Telephone 1 to FRIDMAN, at telephone number 415-710-3564. Following is a partial summary of the conversation between NEYS and FRIDMAN: FRIDMAN says that NEYS left him pennyless (took all of the money that FRIDMAN had). FRIDMAN tells

24

NEYS to leave everything at Jesse's (leave all the drugs at Jesse's residence) because FRIDMAN can pick it (drugs) up if anything. NEYS says he will take two zips (two ounces of methamphetamine) with him.

77.   Based on intercepted telephone conversations and surveillance described above, I believe that NEYS and FRIDMAN purchased 2,000 ecstasy pills and one pound of methamphetamine from NGUYEN. I also believe that FRIDMAN brought the money that was used for the drug transaction.

78.   Based on information obtained from the above described intercepted conversations, and surveillance, I have probable cause to believe that NEYS and FRIDMAN committed the following federal offense: Conspiracy to distribute and possess with intent to distribute a controlled substance to wit methamphetamine, in violation of Title 21, United States Code, Section 846.

B.   Criminal Conversations Between TUCHINSKY and NEYS

79.   On April 10, 2005, at approximately 9:11 PM, NEYS received an incoming call on Target Telephone 1, from TUCHINSKY, at telephone number 415-368-3350. Following is a summary of the conversation between TUCHINSKY and NEYS: TUCHINSKY says there is a strange girl in the building who might freak out and call the cops. TUCHINSKY says that Scott (phonetic) LNU wants to find someone to make it clear to her that it is not in her best interest to do that. TUCHINSKY needs someone really scary, not to hurt her, but to scare her. NEYS asks how much TUCHINSKY is willing to pay. NEYS says Jessie (phonetic) LNU is good. NEYS says it may cost around 500 (dollars), but he is not sure. TUCHINSKY says it is really important. NEYS says, he will find out.

80.   On April 11, 2005, at approximately 4:01 AM, the below described telephone conversation was intercepted on Target Telephone 1 (due to technical difficulties no telephone number or direction of the call is available. Through voice recognition and the context of the call, it was determined that this conversation is between TUCHINSKY

and NEYS.). Following is a summary of the conversation between TUCHINSKY and
NEYS: TUCHINSKY asked if NEYS is sleeping. TUCHINSKY wanted to give NEYS
some money and also that bitch (the strange girl in the building mentioned in the previous
paragraph) called Scott and wants to call the cops. NEYS inquired what will she tell the
cops. TUCHINSKY says, that she probably will not tell them shit. TUCHINSKY feels
they need to show her a fucking picture of her parents and her house. Explain to her there
will be consequences on her and her fucking family. TUCHINSKY says, she needs to be
scared. NEYS says, have Carlos do it. NEYS' guy (an unidentified male who works for
NEYS) does not talk, he just hits people. TUCHINSKY says, that was issue number one
- now for issue number two - TUCHINSKY asks if NEYS would like a thousand dollars
(in exchange for drugs). NEYS says yes. NEYS will let TUCHINSKY in.

81.     On May 4, 2005, at approximately 3:53 PM, NEYS received an incoming call on Target
Telephone 1, from TUCHINSKY, at telephone number 415-637-0075. The following is a
partial summary of the conversation between TUCHINSKY and NEYS: TUCHINSKY
wants to know if NEYS has money for him. TUCHINSKY is going to pick up stuff
(methamphetamine) and asks if NEYS needs anything. NEYS wants to do it for seven
and a half ($7,500). TUCHINSKY says depending on how the shit (methamphetamine)
is, it will be (cost) 74 or 76 ($7,400 or $7,600 per pound). TUCHINSKY wants half of
the money from NEYS up front. NEYS will bring all the money but wants to see it
(methamphetamine) first. TUCHINSKY says the dude (his supplier) is coming from San
Jose and they meet in Hillsdale off of 92 (Interstate 92) and it's not a good spot to look at
it (the methamphetamine). NEYS says that Irusik (FRIDMAN) has most of the money,
and one of them (NEYS or FRIDMAN) will come to meet TUCHINSKY.

82.     On May 5, 2005, at approximately 2:41 PM, NEYS received an incoming call on Target
Telephone 1, from TUCHINSKY, at telephone number 415-637-0075. The following is a
partial summary of the conversation between TUCHINSKY and NEYS: TUCHINSKY
asks if everything was good. NEYS tells TUCHINSKY that FRIDMAN said that the

1    stuff (methamphetamine) was good.

2    83.    On May 10, 2005, at approximately 9:22 PM, NEYS made an outgoing call on Target

3           Telephone 1 to TUCHINSKY, at telephone number 415-637-0075. Following is a partial

4           summary of the conversation between NEYS and TUCHINSKY:  NEYS says the Naked

5           Ladies (type of ecstasy pill) are expensive, and he doesn't know if TUCHINSKY wants

6           them. NEYS says they are four dollars if you get 1,000 (ecstasy pills). TUCHINSKY

7           asks if that's his price or NEYS' price. NEYS says that's our price. If NEYS buys three

8           (3,000 pills), it (the price) will go down to three seven ($3.70 per pill). TUCHINSKY

9           asks if those (ecstasy pills) are the thick ones with the picture of a naked lady on them.

10          NEYS says yes, they (Naked Lady ecstasy pills) are good, they are rated elite (high

11          quality). TUCHINSKY says he knows that Scott buys them because they (Naked Lady

12          ecstasy pills) are a speciality item. NEYS asks if TUCHINSKY wants him to grab one

13          (1,000 Naked Lady ecstasy pills) for him. NEYS says that he has two kinds (of ecstasy)

14          and the Lady Faces (type of ecstasy pills) are cheaper (than the Naked Ladies). NEYS is

15          going to get one (1,000) of each. TUCHINSKY will take a half (500 of the Lady Faces)

16          for sure, maybe a whole (1,000 of the Naked Ladies). NEYS says it's still going to be

17          four dollars (each for 1,000 Naked Ladies) because NEYS is buying one (1,000) of each

18          (the Lady Faces and the Naked Ladies). TUCHINSKY says he understands.

19   84.    Based on the information obtained from the above described intercepted conversations, I

20          have probable cause to believe that NEYS, FRIDMAN and TUCHINSKY committed the

21          following federal offense:  Conspiracy to distribute and possess with intent to distribute a

22          controlled substance to wit methamphetamine and ecstasy, in violation of Title 21, United

23          States Code, Section 846.

24   VI.    CONCLUSION

25   85.    Based on the above mentioned facts set forth in this affidavit, your affiant believes there

26          is probable cause to believe that beginning at a time unknown but no later than October of

27          2004 to approximately July 12, 2005, in the Northern District of California, defendants

28

                                                27

NEYS, FRIDMAN, DAVIS, CALDER, TUCHINSKY, and SANDERS did agree to distribute and possess with intent to distribute approximately 1,456 grams of methamphetamine and approximately 755 grams of ecstasy in violation of Title 21, Section 846.

86.   Based on the above mentioned facts set forth in this affidavit, your affiant believes there is probable cause to believe that on or about January 4, 2005, in the Northern District of California, defendant NEYS did distribute and possess with intent to distribute approximately 54.4 grams of pure methamphetamine in violation of Title 21, Section 841(a)(1).

87.   Based on the above mentioned facts set forth in this affidavit, your affiant believes there is probable cause to believe that on or about April 15 through April 16, 2005, in the Northern District of California, defendants NEYS and DAVIS did distribute and possess with intent to distribute approximately 207 grams of ecstasy in violation of Title 21, Section 841(a)(1).

88.   Based on the above mentioned facts set forth in this affidavit, your affiant believes there is probable cause to believe that on or about April 30, 2005, in the Northern District of California, defendants **SEMYON NEYS** and **JENA DAVIS** did distribute and possess with intent to distribute approximately 440 grams of pure methamphetamine in violation of Title 21, Section 841(a)(1).

89.   Based on the above mentioned facts set forth in this affidavit, your affiant believes there is probable cause to believe that on or about June 21, 2005, in the Northern District of California, defendants NEYS and CALDER did distribute and possess with intent to distribute approximately 273 grams of ecstasy in violation of Title 21, Section 841(a)(1).

//
//
//
//
//

28

1  90.   Based on the above mentioned facts set forth in this affidavit, your affiant believes there

2        is probable cause to believe that on or about July 10, 2005, in the Northern District of

3        California, defendants NEYS, SANDERS, and FRIDMAN did distribute and possess

4        with intent to distribute approximately 274 grams of ecstasy in violation of Title 21,

5        Section 841(a)(1).

6

7                                            Joe Yum, Special Agent
                                             Federal Bureau of Investigation

8

9  SUBSCRIBED & SWORN to before me on

10  This ___ day of ___July___, 2005.

11

12  United States Magistrate Judge
    EDWARD M. CHEN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29